| | |
|---|---|
| KAYIE SHAUNE WRIGHT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES, et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1), and on his Motions for Copies at No Cost, (Doc. Nos. 3, 4), and Plaintiff's Motion and Request for Injunction, (Doc. No. 5). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 13).

**I.     BACKGROUND**

*Pro se* incarcerated Plaintiff has filed a Complaint pursuant to 42 U.S.C. § 1983. He complains about a number of conditions at the Marion Correctional Institution where he resided at the time he filed the Complaint.[1] He names as Defendants the United States, the North Carolina Department of Public Safety ("NCDPS"), NCDPS Director of Prisons Kenneth Lassiter, Security Risk Group ("SRG") Director Christopher Rich, and the following Marion C.I. employees: Administrator Hubert Corpening; Assistant Superintendent Donald Watkins; Assistant Superintendent of Programs David Cotherin; Program Director of RDU Julia Jenkins; Program Director of Rehabilitative Diversion Unit ("RDU") Program Gregory Swink; Disciplinary Hearing Officer Robert Barker; Mental Health Treatment Staff Dr. Murphy; Transfer Captain Donald

---

[1] Plaintiff's current address of record is at the Polk Correctional Institution in Butner, North Carolina.

Newton; Sergeant Adam Hergenrother; and SRG Officer J. Nichols.

Construing the Complaint liberally and accepting the allegations as true, Plaintiff claims that he is being discriminated against, denied equal protection based on his status as a "Sovereign Citizen," "Natural Person" and "Free Born Moor." (Doc. No. 1 at 10). Plaintiff alleges that, since he entered Marion C.I., he has been "discriminated, targeted, prejudiced against, deprived of constitutional rights and retaliated against." (Doc. No. 1 at 9-10). Plaintiff claims that he is being erroneously classified as a gang affiliate which has a number of impacts on the conditions of his confinement that, he alleges, are depriving him of his constitutional rights.

Plaintiff appears to complain that Defendants made unauthorized withdrawals from his prison trust account in the amount of $10 per disciplinary infraction. (Doc. No. 1 at 16). Plaintiff claims that these $10 charges are fraudulent under North Carolina law and the United States Code and are gained through dishonesty, blackmail, and extortion. Plaintiff claims that the $10 fines minimize the study or education of law and may discourage other offenders from doing so, and that NCDPS/DOC does not provide Plaintiff with adequate legal assistance or information. Plaintiff further claims that Defendant Barker deliberately and unlawfully charged Plaintiff's trust fund account with excessive fines and taxes, *i.e.*, administrative fees, without Plaintiff's consent or with the approval of the signatory administrator, Defendant Corpening.

Plaintiff claims that Defendants lack jurisdiction over him because his detention is "founded upon the 'False Identification' of [his] natural person … as 'Black, U.S. Citizen.'" (Doc. No. 1 at 12). Plaintiff appears to claim that criminal charges and/or disciplinary infractions against him should therefore be dismissed. (Doc. No. 1 at 13).

Petitioner claims that he has a serious need for adequate mental health treatment. Plaintiff alleges that he continued to place mental health referrals for help with "deep depression and to

2

notify psychiatrist of mood disorders…," (Doc. No. 1 at 13), yet Dr. Murphy deliberately failed to provide adequate treatment and continues to house Plaintiff in *de facto* segregation indefinitely without due process or adequate treatments.

Plaintiff claims that he is being denied adequate recreation and that he is forced to strip search in order to get recreation, which results in 20 strip searches in a four-week timeframe. He claims that these conditions have been imposed on him with deliberate indifference to his health and safety, and that the lack of recreation due to the implementation of excessive strip searching is causing Plaintiff's mental and physical wellbeing to deteriorate, caused by deliberate indifference, negligence, and wanton infliction of mental and physical pain.

Plaintiff claims that Defendants are depriving him of his First Amendment rights by depriving Plaintiff of religious rights and freedom because Plaintiff "know[s] and understand[s] and truly believe[s] the 'Holy Bible' that in a God in which is Sovereign with unalienable Rights supported by the very words of Jesus in the Holy Bible…." (Doc. No. 1 at 14).

Plaintiff next alleges that SRG staff members are harassing him. Specifically, Defendant Nichols placed gang-related infractions against Plaintiff more than six times in a seven-day period, and three times within 24 hours. (Doc. No. 1 at 18). Defendant Barker entered a finding of guilt in Plaintiff's disciplinary proceedings by Defendant Nichols after being notified that Plaintiff never reviewed any policy and procedures of NCDPS/DOC related to what is and is not considered gang participation and what is considered SRG. Defendant Barker deliberately imposed these conditions and made that finding out of retaliation for a complaint filed against him in case number 1:18-cv-90, which violates the Fifth and Eighth Amendments, and that Defendant Barker deducted excessive funds from Plaintiff's account and burdened him with debt without consent or due process. Defendant Hergenrother, who is former SRG staff, is in cahoots with the retaliation, and

3

"deliberately placed" a "U.C.C. I-207 form" and used J. Nichols to harass and prejudice Plaintiff. (Doc. No. 1 at 18).

He alleges that Defendants Corpening and Murphy deliberately denied Plaintiff protective custody after being informed that Plaintiff is in fear for his life at Marion C.I. "due to discrimination and treated differently by staff/Respondents" Defendants Corpening, Jenkins, Cotherin, Swink, and Watkins [who are] … depriving Plaintiff of liberty and placement of harsher conditions than other offenders, and by targeting Plaintiff for exercising his rights and challenging Defendants' scope of authority and inactions." (Doc. No. 1 at 19). Administrators with authority, *i.e.*, Defendants Corpening, Watkins, Cotherin, Jenkins, Swink, Murphy, and Newton, failed to acknowledge Plaintiff's declaration of protective custody and continue to deprive him of those requests.

Plaintiff claims that he suffered the following injuries as a result of Defendants' actions: stolen personal property, pain and suffering, depression, stress, intentional interference, unlawful detainer, intentional inflicted emotional distress, loss of personal property, post-traumatic stress, theft of personal property, eating disorders, modes disorders, fraud, unlawful levy, denationalization, defamation of character, cruel and unusual punishment, forcible detainer, lack of trust, sleeping difficulties, intentional inflicted emotional distress, and severe systematic psychological abuse. (Doc. No. 1 at 3).

Plaintiff seeks damages, transfer, discovery, judgment on the pleadings, partial summary judgment, all other relief the Court deems just and equitable, and a jury trial. (Doc. No. 1 at 5). Plaintiff also seeks an injunction because he fears another reprisal that may lead to more irreparable injuries by the Defendants "or employees that may hold a vendetta against Plaintiff for the filing of this good faith complaint…." (Doc. No. 1 at 19). Plaintiff claims that he should be granted

4

judgment as a matter of law because he has presented a *prima facie* case. He lists discovery requests that he seeks. He further argues that partial summary judgment should be granted because his exhibits show no genuine dispute of material fact that Defendants are grossly incompetent and acted under color of law, office and authority and were deliberately negligent that led to breaches of his rights which injured him.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *pro se*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see

Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens of any Foreign State." U.S. Const. Amend. 11. Neither a State nor its officials acting in the official capacities are "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, civil rights suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985).

As a sovereign the United States "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." McLean v. United States, 566 F.3d 391, 401 (4th Cir. 2009) (quoting United States v. Testan, 424 U.S. 392, 399 (1976)) (internal quotations omitted). The United States has not waived its sovereign immunity for constitutional tort suits, such as the one here. Id. Congress has not imposed § 1983 liability upon states, and the state of North Carolina has done nothing to waive its immunity. Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989) (citing McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987)).

Neither the United States or NCDPS is a "person" against whom this § 1983 suit can proceed and Plaintiff's claims against them are barred by sovereign immunity. Therefore, plaintiff's action against the NCDPS and the United States will be dismissed with prejudice.

The remaining claims will be dismissed without prejudice as insufficient to proceed. Plaintiff has failed to clearly describe the Defendants' alleged actions and explain how each Defendant has violated his rights under the color of state law. See generally Fed. R. Civ. P. 8(a)(2) (short and plain statement of the claim is required); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient).

Moreover, Plaintiff's wide-ranging claims appear to be largely unrelated to each other and should be brought in separate suits. See generally George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (noting that the inclusion of unrelated claims and numerous defendants results in the sort of "morass" that the Federal Rules of civil Procedure and the Prison Litigation Reform Act are supposed to prevent). Plaintiff is placed on notice that he may not bring unrelated claims against unrelated parties in a single action. See Fed. R. Civ. P. 18(a), 20(a)(2); George, 507 F.3d at 607 ("[u]nrelated claims against different defendants belong in different suits," so as to prevent prisoners from dodging the fee payment or three-strikes provisions of the Prison Litigation Reform Act). Plaintiff may only bring a claim against multiple defendants as long as: (1) the claim arises out of the same transaction or occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2). The Court further notes that several of the Defendants that Plaintiff has named in the instant action also appear in other cases he has

7

brought before this Court and it is improper to bring duplicative claims in separate actions. [2]

Plaintiff appears to seek relief for himself and on behalf of others. However, a prisoner cannot file a lawsuit on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). Claims on behalf of others should be omitted from any future complaint.

To the extent that Plaintiff claims that Defendants lack authority over him due to his status as a natural citizen and Moor, this claim is frivolous and should not be raised in any refiled complaint. Courts have repeatedly rejected this type of argument by individuals who claim to be part of the Moorish movement. See Hampton v. City of Durham, 2010 WL 3785538 at *2-3 (M.D.N.C. Sept. 22, 2010) (unpublished) (collecting cases); see also Heck v. Humphrey, 512 U.S. 477 (1994) (to recover damages for harm caused by actions whose alleged unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence were reversed on direct appeal, expunged by executive order, declared invalid, or called into question by the issuance of a federal writ of habeas corpus); Younger v. Harris, 401 U.S. 37 (1971) (federal courts must refrain from staying or enjoining pending state prosecutions except under special circumstances); Edwards v. Balisok, 520 U.S. 641 (1997) (a claim for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983).

---

[2] For instance, Plaintiff names Defendants Corpening, Watkins, Cotehrin in case number 18-cv-332, and Defendants Watkins, Barker, and Hergenrother in case number 18-cv-90.

Plaintiff shall have **thirty (30) days** in which to file an Amended Complaint in which he may attempt to cure these deficiencies and state a facially sufficient claim for relief. Although Petitioner is appearing *pro se*, he is required to comply with all applicable timeliness and procedural requirements, including the Local Rules of the United States District Court for the Western District of North Carolina and the Federal Rules of Civil Procedure. The Amended Complaint must be on a § 1983 form, which the Court will provide, and it must refer to the instant case number so that it is docketed in the correct case. It must contain a "short and plain statement of the claim" showing that Plaintiff is entitled to relief against each of the defendants. Fed. R. Civ. P. 8(a)(2). The Amended Complaint must contain all claims Plaintiff intends to bring in this action, identify all defendants he intends to sue, and clearly set forth the factual allegations against each of them. Plaintiff may not amend his Complaint by merely adding defendants and claims in a piecemeal fashion. The Amended Complaint will supersede the original Complaint so that any claims or parties omitted from the Amended Complaint will be waived. See Young v. City of Mt. Ranier, 238 F.3d 567 (4th Cir. 2001).

**IV.     PENDING MOTIONS**

Plaintiff has filed two Letters docketed as Motions, (Doc. Nos. 3, 4), in which he seeks free copies of his Complaint and exhibits because he had to send the original documents to the Court.

There is no provision in the *in forma pauperis* statute nor does any other statute authorize courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant. See 28 U.S.C. § 1915. However, the Court will order the Clerk of Court to mail Plaintiff a copy of his Complaint, (Doc. No. 1), and its attachments to Plaintiff as a courtesy in this case.

In the Complaint and in Plaintiff's separately-filed Motion, (Doc. No. 5), Plaintiff seeks

9

various types of injunctive relief.

A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). It is an extraordinary remedy that is never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 20; Di Biase v. SPX Corp., 872 F.3d 224, 229 (4th Cir. 2017).

Reviewing Plaintiff's motion based on the relevant factors, Plaintiff is not entitled to a temporary restraining order or a preliminary injunction. Plaintiff fails to explain how he is being irreparably harmed during the pendency of the instant action and he fails to show that he is likely to prevail in this action. Plaintiff simply has not shown that he is entitled to a temporary restraining order or a preliminary injunction under these circumstances and his motion will therefore be denied. Moreover, Plaintiff no longer resides at the Marion C.I., and therefore, injunctive relief is moot to the extent that Plaintiff sought relief from the conditions at that facility and are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). For all these reasons, Plaintiff's requests for injunctive relief will be denied.

## V. CONCLUSION

For the reasons stated herein, the Complaint is dismissed with prejudice as to the United States and NCDPS and the remainder of the Complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Plaintiff shall have thirty (30) days in which to file a superseding Amended Complaint in accordance with this Order.

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint, (Doc. No. 1), is **DISMISSED** with prejudice as to the United States and NCDPS and the remainder of the Complaint is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

2. Plaintiff shall have **thirty (30) days** in which to file an Amended Complaint, particularizing his claims and providing facts to support his legal claims against each Defendant. If Plaintiff fails to file an Amended Complaint accordance with this Order and within the time limit set by the Court, this action will be dismissed without prejudice and without further notice to Plaintiff.

3. Plaintiff's Motions for Copies at No Cost, (Doc. Nos. 3, 4), is **GRANTED** as a courtesy and the Clerk of Court is instructed to mail Plaintiff a courtesy copy of his Complaint and its attachments, (Doc. No. 1).

4. Plaintiff's Motion and Request for Injunction, (Doc. No. 5), is **DENIED**.

5. The Clerk of Court is directed to mail a copy of a new Section 1983 complaint form to Plaintiff.

Signed: December 13, 2019

Frank D. Whitney
Chief United States District Judge