# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-146-FDW

| | |
|---|---|
| **KAYIE SHAUNE DeVORE WRIGHT,** | ) |
| **Plaintiff,** | ) |
| vs. | ) **ORDER** |
| **UNITED STATES, et al.,** | ) |
| **Defendants.** | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 17). Also pending are Plaintiff's Motion for Summary Judgment, (Doc. No. 19), and Motion for Default Judgment, (Doc. No. 20). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 13).

## I. BACKGROUND

*Pro se* incarcerated Plaintiff has filed this civil rights action pursuant to 42 U.S.C. § 1983. The Complaint addressed a number of conditions at the Marion Correctional Institution where Plaintiff resided at the time he filed the Complaint.[1] On initial review, the Court dismissed the Complaint with prejudice as to immune Defendants and dismissed the remainder of the Complaint without prejudice and provided Plaintiff an opportunity amend.

In the Amended Complaint, Plaintiff names as Defendants: North Carolina Director of Prisons Todd E. Ishee, Director of Security Risk Group Christopher Rich, Disciplinary Hearing Officer Robert T. Barker, Marion Correctional Institution Superintendent Herbert Corpening,

---
[1] Plaintiff's current address of record is at the Polk Correctional Institution in Butner, North Carolina.

1

Assistant Superintendent Donald Watkins, Assistant Superintendent of Programs David Cotherin, RDU Program Director Julia Jenkins, RDU Program Director Gregory Swink, SRG Captain Captain Long, SRG Lieutenant Surrat, SRG Sergeant Taylor, SRG Officer Adam Hergenrother, SRG Officer J. Nichols, Psychiatrist Murphy, and Assistant Unit Manager Christopher Curtis.

Construing the Amended Complaint liberally and accepting it as true, Plaintiff has been discriminated against, retaliated against, and deprived of his constitutional rights based on UCC/sovereign citizen activities that North Carolina law and NCDPS policy classifies as gang-affiliated. (Doc. No. 17-2 at 2). North Carolina General Statutes Chapter 25, Article I, §§ 207 and 308 labeling UCC activities as gang affiliation deliberately attempts to "compel and dissuade Plaintiff who wishes to utilize, exercise and/or enforce constitutional rights." (Doc. No. 17-2 at 2). Defendants Rich, Corpening, Watkins, Long, Surrat, Taylor, and Nichols are "initiating the implementation" by classifying as gang activity any documents labeled as "UCC" or "sovereign citizen." (Doc. No. 17-2 at 2). Defendant Ishee is legally responsible for the overall operation of each institution within the DPS including Marion C.I. and approves the superintendent of each prison. This is discriminatory and deprives Plaintiff of his religious and political beliefs. This is slanderous and has resulted in a campaign of harassment and retaliation by Defendants Hergenrother, Nichols, Taylor, Surrat, and Long with regards to disciplinary infractions. Plaintiff's First Amendment rights are being violated when Defendants sanction and punish him by restricting his contact with family over the phone and through visitation when he places "UCC" on documents, which is causing emotional distress. Ishee, as Director of Prisons, has knowledge of "sovereign citizens." (Doc. No. 17-2 at 4).

By treating UCC and sovereign citizen activities as gang affiliation, NCDPS is regularly being fined excessive administrative fees by Defendant Barker without Plaintiff's consent or

2

approval of "signatory administrator" Defendant Corpening. (Doc. No. 17-2 at 1). Defendant Rich, as SRG Director, implemented the policy classifying UCC as gang activity, charging it as an infraction, and deducting $10 for each infraction. This attempts to discourage Plaintiff, harass him, and discriminate against him. Defendants Long, Surrat, Hergenrother, Taylor, and Nichols have a history of placing infractions against Plaintiff with a "deliberate campaign of harassment, extortion and persuasions to minimize complaints filed and studies of law to continue the advantage for Plaintiff's labor." (Doc. No. 17-2 at 4). This is why Defendants refuse to provide Plaintiff with adequate legal assistance and/or information. Defendants are deliberately harassing Plaintiff and failing to protect him by placing gang infractions over six times within a seven-day period and three times within 24 hours. Defendant Barker entered a finding of guilt on all infractions by SRG Defendants after being notified that Plaintiff never reviewed any policies and procedures regarding sovereign citizens. Defendant Barker deliberately deprived Plaintiff of privileges and imposed conditions out of retaliation due to complaints filed against him "without Plaintiff's acknowledgement of any policy and consent deducting excessive fines placing Plaintiff's trust account with an [sic] burden of debt over $1,000.00 without consent." (Doc. No. 17-2 at 4).

Plaintiff's loss of recreation through the implementation of excessive strip searching has caused Plaintiff's mental and physical well-being to deteriorate. This is due to Defendants' deliberate indifference, negligence and wanton infliction of mental and physical pain. Defendants imposed these conditions with deliberate indifference to Plaintiff's health, safety, and conditions of confinement. Plaintiff is forced to strip search for recreation, which can result in 20 strip searches during a 28-day period. This is "a result from Defendants' implementation." (Doc. No. 17-2 at 3). Plaintiff is also forced to strip search when exiting his cell for medical, mental health, disciplinary hearings, visits, court trips, etc., resulting in up to three or four strip searches per day.

Defendants Corpening, Watkins, Cotherin, Jenkins, and Swink are the "proximate cause" of these strip searches and are depriving Plaintiff of his serious need for adequate mental health treatment and recreation.

Defendants Corpening, Watkins, Cotherin, Jenkins, Swink, Curtis, and Murphy deliberately denied Plaintiff protective custody after Plaintiff notified them of his fear for his physical and mental well-being and safety due to the discrimination and differential treatment resulting in harsher conditions than other inmates. These actions were taken because Plaintiff is exercising his constitutional rights and challenging Defendants' scope of authority, inactions, and policies and procedures.

Plaintiff continued to place mental health referrals seeking assistance with depression and to notify the psychiatrist of mood disorders. The psychiatrist, Defendant Murphy, deliberately failed to provide adequate treatment after acknowledging Plaintiff's indefinite "de facto segregation" of over 15 months. (Doc. No. 17-2 at 3).

Plaintiff complains that Defendants' actions were taken without any apparent legitimate penological purpose and are not reasonably related to legitimate penological interests.

Plaintiff lists as injuries pain and suffering, depression, stress, intentional interference, intentional infliction of emotional distress, loss of personal property, theft of personal property, defamation of character, denationalization, inadequate medical treatment, and depression. (Doc. No. 17 at 5). He seeks damages, injunctive relief, transfer to a South Carolina correctional facility, a jury trial, and any other relief the Court deems just, proper and equitable.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding *pro se*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state

a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1)** **First Amendment**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

**(A)    Free Speech**

A court assesses the reasonableness of a prison regulation that impinges on a prisoner's constitutional rights by considering: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it, (2) whether there are any alternative means of exercising the right that remain open to inmates, (3) the impact that accommodation of the asserted constitutional right will have on guards, other inmates, and prison resources generally, and (4) whether there are ready alternatives for furthering the governmental interest. Turner v. Safley, 482 U.S. 78, 90-92 (1987).

References by *pro se* litigants to themselves as sovereign citizens or UCC secured parties are commonly used under the discredited "Sovereign Citizen" theory to attempt to avoid jurisdiction over them and their criminal convictions. See United States v. Ulloa, 511 Fed. Appx. 105, 106 n. 1 (2d Cir. 2013)) ("sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to

6

regulate their behavior"); United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status ... as a "sovereign citizen" [or] a "secured-party creditor," ... that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily"); United States v. Schneider, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing the "sovereign citizen" arguments as having "no conceivable validity in American law"); United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (holding that defendant's "sovereign citizen" argument was "completely without merit" and "patently frivolous"); see, e.g., Gravatt v. United States, 100 Fed. Cl. 279 (Fed. Cl. Sept. 27, 2011) (holding that plaintiff's complaint was frivolous and should be counted as a "strike" under 28 U.S.C. § 1915(g)). The sovereign citizen movement has been classified by the Federal Bureau of Investigations as a domestic terror threat because they are anti-government extremists. Colar v. Heyns, 2013 WL 141138 (W.D. Mich. Jan. 11, 2013).

Plaintiff appears to claim that Defendants' restrictions on sovereign citizen UCC activity are violating his right to free speech. Restrictions on expressing sovereign citizen and UCC ideology does not violated Plaintiff's free speech rights because restrictions on dangerous and subversive groups is rationally related to a legitimate penological interest.

**(B)** **Free Exercise of Religion**

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89).

7

Plaintiff appears to claim that DPS policy classifying UCC documents and sovereign citizen activity as gang activity is depriving him of the right to practice his religion. Plaintiff has failed to state a claim for relief. He does not adequately allege that he has a sincerely held religious belief or that official action substantially burdened his exercise of that belief.[2]

Plaintiff's First Amendment claims will therefore be dismissed as frivolous and for failure to state a claim upon which relief can be granted.

**(C)** **Retaliation**

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000); see Am. Civil Libs. Un. of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights."). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To succeed on such a claim, a plaintiff must establish: (1) his or her speech was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists between the speech and retaliatory action. Suarez, 202 F.3d at 686; see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Wicomico Cnty., 999 F.2d at 785; Huang v. Board of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."

---

[2] Assuming *arguendo* that Plaintiff is attempting to state a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), he has likewise failed to do so.

Adams, 40 F.3d at 74.

Plaintiff appears to argue that Defendants Corpening, Watkins, Cotherin, Jenkins, Swink, Curtis, and Murphy retaliated against him by denying him protective custody because Plaintiff is exercising his constitutional rights and challenging Defendants' scope of authority, inactions, and policies and procedures. He further appears to allege that Defendants Hergenrother, Nichols, Taylor, Surrat, and Long are retaliating against him by giving him disciplinary infractions.

Plaintiff's claim is too vague and conclusory to proceed. He has sufficiently alleged that he exercised his constitutional rights to criticize Defendants. However, he has failed to sufficiently allege that Defendants' alleged retaliatory actions adversely affected his free speech or that there is any causal relationship between the speech and the allegedly retaliatory action. See Sections 2, 4(B), *infra*. Moreover, this appears to be an attempt by Plaintiff to undermine the validity of his disciplinary consequences of his actions with which he disagrees. See Section 2, *infra*.

**(2)** **Prison Discipline**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary

9

hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). A disciplinary hearing officer's findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). Claims for declaratory relief and money damages based on allegations of deceit and bias on the part of state officials involved in disciplinary proceedings that necessarily imply the invalidity of the punishment imposed is not cognizable under § 1983. Edwards v. Balisok, 520 U.S. 641 (1997).

Plaintiff appears to argue that he should not have been charged with disciplinary infractions charged with fines or other sanctions because he disagrees with prison authorities that sovereign citizen/UCC activity is gang activity. Plaintiff's challenge to the disciplinary actions and fines would necessarily imply the invalidity of the punishment and therefore this claim is not cognizable under § 1983. See Edwards, 520 U.S. at 641. Plaintiff's challenge to Defendants' disciplinary actions based on his gang activity will therefore be dismissed as frivolous and for failure to state a claim.

**(3)      Strip Searches**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. Amend. IV. The applicability of the

Fourth Amendment turns on whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." Hudson v. Palmer, 468 U.S. 517, 525 (1984) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)). A prisoner retains "some legitimate expectation of privacy in his person" under the Fourth Amendment. See King v. Rubenstein, 825 F.3d 206, 214–15 (4th Cir. 2016). The Supreme Court has "developed a flexible test to determine the reasonableness of a broad range of sexually invasive searches...." United States v. Edwards, 666 F.3d 877, 883 (4th Cir. 2011) (citation and internal quotation marks omitted). The following factors determine the reasonableness of the search: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559. "The task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.'" Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. 318, 328 (2012) (quoting Bell, 441 U.S. at 548). Searches conducted "in an abusive fashion … cannot be condoned." Bell, 441 U.S. at 560. The deference afforded to prison administrators "does not insulate from review actions taken in bad faith and for no legitimate purpose." Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996) (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)).

Plaintiff argues that Defendants are imposing excessive strip searches by requiring strip searches for recreation, medical and mental health appointments, disciplinary hearings, visits, and court trips. Plaintiff appears to allege that he is choosing to forego mental health treatment and recreation to avoid the strip searches and that the lack of treatment and recreation is negatively impacting his mental and physical well-being.

Plaintiff has failed to state a sufficient § 1983 claim. Plaintiff is a convicted inmate who

admits he has accrued numerous prison disciplinary infractions for gang activity. See generally Bell, 441 U.S. at 559 (noting that detention facility is a unique place fraught with serious security dangers). Although Plaintiff conclusively asserts that Defendants' actions were taken without any apparent legitimate penological purpose, does not support that conclusion with any factual allegations and has alleged nothing to suggest that the strip searches are unreasonable in any way. See generally Assoc. Gen. Contractors of Ca., Inc. v. Ca. St. Council of Carpenters, 459 U.S. 519, 526 (1983) (although the court must assume the plaintiff can prove the facts alleged, it is not proper to assume that the plaintiff can prove facts that it has not alleged or that defendants have violated the law in ways that have not been alleged). Plaintiff's vague and conclusory allegations fail to state a plausible claim that he is being subjected to unreasonable searches. See, e.g., Whitehead v. Marcantel, 766 Fed. Appx. 691 (10th Cir. 2019) (affirming dismissal of inmate's § 1983 claim that strip searches prior to family visits violates the Fourth Amendment where plaintiff failed to allege any facts to support his assertion that pre-visit searches are unreasonable). This claim will therefore be dismissed.

**(4)** **Cruel and Unusual Punishment**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams, 77 F.3d at 761. The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S.

517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987).

### (A) Deliberate Indifference to Serious Medical Needs

As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs, including psychological needs. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); see Buffington v. Baltimore Cnty., Md., 913 F.2d 113, 120 (4th Cir. 1990) ("A serious psychological impairment can qualify as [a serious] medical need."). To state such a claim, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 241 (internal quotation marks omitted). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990),

*overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852. "[M]ere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Wright v. Collins, 766 F.2d 841, 840 (4th Cir. 1985)). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

Plaintiff alleges that he continued to place mental health referrals seeking assistance with depression and to notify the psychiatrist of mood disorders. Psychiatrist Defendant Murphy deliberately failed to provide adequate treatment after acknowledging Plaintiff's indefinite "de facto segregation" of over 15 months. (Doc. No. 17-2 at 3).

Plaintiff's claim is too vague and conclusory to proceed. Although Plaintiff appears to assert that he had depression and mood disorders stemmed from long-term *de facto* segregation, he has failed to allege that his mental condition was sufficiently objectively serious to constitute a serious medical need. He has also failed to adequately allege that Defendant Murphy intentionally disregarded an excessive risk to his health or safety. This claim will therefore be dismissed for failure to state a claim.

**(B)** **Failure to Protect**

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (internal quotations omitted). To obtain relief under § 1983 on a claim of failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury" resulting from that failure; and (2) the prison officials

had a "sufficiently culpable state of mind," which in this context is deliberate indifference. Farmer, 511 U.S. at 834. A prison official is "deliberately indifferent to a substantial risk of harm to a [prisoner] when that [official] 'knows and disregards' the risk." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (quoting Farmer, 511 U.S. at 837). "It is not enough to prove that the official should have known of the risk; instead, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he should draw the inference.'" Kartman v. Markle, 582 Fed. Appx. 151, 153 (2014) (quoting Farmer, 511 U.S. at 837). A showing of negligence does not rise to the level of deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).

Plaintiff contends that Defendants Corpening, Watkins, Cotherin, Jenkins, Swink, Curtis, and Murphy deliberately denied Plaintiff protective custody after he notified them of his fear for his physical and mental well-being and safety due to the discrimination and differential treatment resulting in harsher conditions than other inmates.

Plaintiff has not sufficiently alleged that there was a substantial risk to his health or safety and to which Defendants knowingly exposed him by refusing to place him in protective custody. Plaintiff's vague and conclusory allegations fail to state a claim for failure to protect and therefore this claim will be dismissed.

## IV. PENDING MOTIONS

Plaintiff has filed a Motion for Summary Judgment, (Doc. No. 19), and Motion for Default Judgment, (Doc. No. 20), that are pending before the Court for consideration. Both of Plaintiff's Motions are premature because none of his claims have passed initial review and no Defendant has been served. These Motions are also moot because the Amended Complaint has failed to pass initial review and this action will be closed.

## V. CONCLUSION

For the reasons stated herein, the Amended Complaint is dismissed as frivolous and for failure to state a claim upon which relief can be granted, Plaintiff's pending Motions will be denied, and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint, (Doc. No. 17), is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) as frivolous and for failure to state a claim upon which relief can be granted.

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 19), and Motion for Default Judgment, (Doc. No. 20), are **DENIED**.

3. The Clerk is instructed to close this case.

Signed: April 3, 2020

Frank D. Whitney
Chief United States District Judge